**Earl H. BAXTER, Plaintiff,**

v.

**AT & T COMMUNICATIONS, Defendant.**

Civ. No. 88–471 (CSF).

United States District Court, D. New Jersey.

May 2, 1989.

Arthur N. Martin, Jr., P.C., Newark, N.J., for plaintiff.

Collier, Jacob & Sweet by Cynthia M. Jacob, Somerset, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Plaintiff, Earl H. Baxter, instituted this employment discrimination suit on January 21, 1988, against his former employer, A.T. & T. Communications ("A.T. & T."), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(g) ("Title VII") and the New Jersey Law Against Discrimination, N.J.Stat.Ann. § 10:5–12 *et seq.* ("NJLAD"). Specifically, plaintiff alleges that A.T. & T. engaged in a pattern and practice of employment discrimination on the basis of race by failing to train him properly when he was a trainee in its computer training program and by failing to place him in a position of equal rank and comparable pay when he failed to complete the training program successfully, treatment which was not accorded to similarly situated nonminority employees and which resulted in his termination from the company in February, 1985. The matter is now before the court on motion by A.T. & T. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The following facts are undisputed. Plaintiff began his employment with the Bell System in November, 1967, as an electronic technician for Western Electric. During the time he was at Western Electric, plaintiff received several promotions, until he achieved the position of quality assurance and complaint investigator. In 1976, plaintiff made a lateral transfer to A.T. & T., entering the company as a computer trainee in data processing at the M level. In May, 1983, plaintiff entered A.T. & T.'s Program Basic Training (the "PBT program") and was classified as an MPS–22, a computer-programming trainee assigned to work on various aspects of computer programming. In August, 1983, after completion of the training portion of the program, plaintiff was assigned to a group supervised by Patricia Schiros. His first

assignment was to create a COBOL program.

In his deposition taken on August 18, 1988, plaintiff concedes that Ms. Schiros and his project leader were displeased with the results of his first assignment, both with the work product itself and with the length of time he took to complete it. After corrections had been made on this program, plaintiff was assigned a new 800 program to write. After completing this second program, he submitted it to Pat Schiros. Shortly thereafter, plaintiff's new project leader, Angela Motley, informed him that the specifications contained discrepancies that had to be revised. Although the corrections were made, both Ms. Schiros and Ms. Motley expressed their displeasure at the length of time plaintiff took to complete the program. Plaintiff admits that as early as November, 1983, he was aware that his superiors believed that he was not meeting their expectations.

Following this, plaintiff spent a short time training on FORTRAN programs. In March, 1984, plaintiff received a 10–month performance review. His performance was rated as marginal, and a development program was established at that time to aid him in improving his oral and written communication skills. Subsequent to that appraisal, plaintiff met with Juanita Davis, his district manager, and discussed the development program. She informed him that he would be placed in a more structured work environment and given specific guidelines and time goals to meet. On August 1, 1984, as a result of his complaints concerning Ms. Schiros's alleged unfair treatment of him, it was agreed that plaintiff would be transferred to another group, headed by William A. Wineburgh, following his return from military leave on August 13, 1984. Plaintiff was no longer subject to Ms. Schiros's supervision after this transfer. Plaintiff was also made aware that he would be placed on a three-month probation following his transfer, and that if improvement in the ability to perform at the expected level was not demonstrated he would be removed from the programming environment. Again, plaintiff was given very detailed instructions as to what his expected level of performance included.

On November 27, 1984, after having monitored plaintiff for a period of just over three months, plaintiff's new supervisor recommended that he be removed from the programming environment. This evaluation was based on Wineburgh's observation that plaintiff's oral and written communications were still poor; he lacked the skills which he should have acquired from the basic PBT program and, despite further on-the-job coaching, he was late with assignments, and those assignments frequently needed revision. In particular, plaintiff took twice as long as expected to develop a COBOL program, and the program needed revision after completion. The November 27, 1984, evaluation stated that plaintiff's new supervisor believed that he lacked the understanding and ability needed to comprehend basic concepts which were a prerequisite for success as a computer programmer. Juanita Davis, the district manager, concurred in this evaluation, and the development program was discontinued at that time. Plaintiff was advised to begin looking for another position within A.T. & T.

Plaintiff concedes that his district manager, Juanita Davis, made repeated efforts to locate another, comparable position for him. In addition, he began searching for another job by making inquiries and answering job advertisements within the company. Ms. Davis advised the plaintiff on February 4, 1985, that she was unable to locate a position for him at his current level (SG–2) or one level lower (SG–1). In addition, plaintiff was informed that his prior position, tape librarian, had been reclassified as a TG–5. Initially, plaintiff agreed to accept a nonmanagement position at either a TG–5 or TG–6 level; however, on February 5, 1985, plaintiff retracted his agreement to accept a nonmanagement position. At this time, he reiterated his awareness that declining a nonmanagement position could result in a separation from the company altogether.

On February 8, 1985, Ms. Davis informed plaintiff that in addition to Bill Wineburgh

and Personnel, she would continue every effort to locate a suitable position for him until March 1, 1985; however, his failure to obtain placement by that time would result in "self-termination." Plaintiff was also informed that if a job was offered to him at the SG–2, SG–1, TG–6 or TG–5 level and he refused it, this would also be regarded as "self-termination." Plaintiff was separated from the company on February 28, 1985, because he was unable to locate a position at his current level and was unwilling to accept a demotion. Shortly before his termination, plaintiff's request for a one-year leave of absence was also denied by A.T. & T.

Plaintiff commenced this action on January 21, 1988, charging that his termination from A.T. & T. was the result of racial discrimination. He bases his claim on the following allegations: (1) that while plaintiff received inadequate and improper training due to a constant change in project leaders, similarly-situated nonminority trainees had the benefit of being supervised by the same project leader throughout the program; (2) that similarly-situated nonminority trainees were not assigned the difficult COBOL program, which resulted in disparate treatment; (3) that racial animus was implicit in his treatment at the hands of his original supervisor, Ms. Schiros, because of her constant questioning about the excessive time plaintiff spent in the training portion of the PBT program and her general lack of patience and discouraging attitude, which carried over to his next supervisor by virtue of their friendship; (4) that his superiors showed a lack of compassion during the latter part of the training program, when he was beset with hardships because of multiple family illnesses and deaths, by requiring him to call in on vacation and death benefit days taken in order to care for his family, and by instructing his co-workers not to communicate with him upon his return.

A.T. & T.'s motion is based on its contention that because the record, including plaintiff's deposition testimony itself, clearly establishes that plaintiff was unqualified and unable to perform as a computer programmer, plaintiff cannot prove two of the necessary elements of his claim—that he was performing his job at the level expected of him and that non-minority employees with comparable work records were retained, while he was terminated—thus precluding plaintiff from establishing a *prima facie* case of racial discrimination under Title VII. A.T. & T. further contends that even if plaintiff were able to make out a *prima facie* case of discrimination, the record is replete with evidence that A.T. & T. had a legitimate reason for removing plaintiff from the computer programming environment—nonperformance—and that plaintiff will be unable to carry his burden of demonstrating that this proffered reason is pretextual or unworthy of credence. Hence, A.T. & T. requests that summary judgment be entered in its favor, dismissing the complaint as a matter of law.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Rule directs the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir.1988).

The current standard for summary judgment requires that before judgment is entered as a matter of law, there be no "genuine" issue of "material" fact; however, the mere existence of some alleged factual dispute between the parties is an insufficient basis on which to deny a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will

affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This requires only that the party seeking summary judgment "[inform] the district court of the basis of its motion, and [identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, supra.* Rule 56 does not require that the moving party support its motion with affidavits or materials which negate the opponent's claim; instead, this "burden may be discharged by 'showing ... that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e);[1] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510. The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.*

The court is mindful that, in deciding a motion for summary judgment, it must construe the facts and inferences therefrom in a light most favorable to the nonmoving party. *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). Nonetheless, the court finds that A.T. & T. has satisfied its burden of showing that there is an absence of evidence to support plaintiff's claims against it. Because plaintiff has failed to set forth sufficient evidence to allow a reasonable jury to return a verdict in his favor, the court is compelled to grant summary judgment to A.T. & T. and dismiss the claim against it.

■ A defendant in a Title VII case may prevail on a summary judgment motion in one of two ways. *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d at 173. First, a defendant may demonstrate that the plaintiff cannot establish a genuine issue of fact as to one or more elements of plaintiff's *prima facie* case. *Id.* If the plaintiff has established a *prima facie* case of discrimination, however, the defendant can still introduce evidence of a legitimate nondiscriminatory basis for its actions, and then show that plaintiff can raise no genuine issue of fact as to whether the proffered reason is a pretext for discrimination. *Spangle, supra; Chipollini v. Spencer Gifts,* 814 F.2d 893, 898–99 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In the instant case, A.T. & T. has successfully established that the evidentiary materials of record are insufficient to carry plaintiff's burden of proving directly or indirectly that his separation was the result of illegal discrimination or that the nondiscriminatory reason proffered by A.T. & T. as a basis for his removal—unsatisfactory performance— was merely a pretext for its racial discrimination.

■ To establish employment discrimination based on race, plaintiff must show that

1. Fed.R.Civ.P. 56(e) provides, in relevant part: When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

A.T. & T. bore a racially discriminatory animus against him and that this animus was a determinative factor in the treatment accorded him during his tenure in the computer programming department by A.T. & T., as well as the ultimate decision to remove him from that environment. *Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 179 and n. 1 (3d Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986); *Lewis v. University of Pittsburgh,* 725 F.2d 910, 914–16 (3d Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all times with the plaintiff.'" *Lewis v. University of Pittsburgh,* 725 F.2d 915 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). Because direct evidence of an employer's motivation is often unavailable or difficult to acquire, however, a plaintiff in an employment discrimination case is permitted to establish his *prima facie* case by indirect proof and, in addition, can demonstrate that the employer's reasons for its actions are pretextual through circumstantial evidence. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d at 897–98.

Due to the absence of "smoking gun" evidence in most discrimination cases, the controlling law now includes the "method of presumptions and shifting burdens of production" first articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Jackson v. University of Pittsburgh,* 826 F.2d 230, 232 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); *Chipollini,* 814 F.2d at 897. The method of proof and burden of production in Title

VII[2] cases is now well settled as the following:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824).

The Supreme Court has mandated that a plaintiff's burden of establishing a *prima facie* case of illegal discrimination is not to be made an onerous one. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. In the absence of direct evidence, plaintiff may state a *prima facie* case of racial discrimination against A.T. & T. by proving, by a preponderance of the evidence: (1) that he belongs to a racial minority; (2) that he was qualified to continue in his capacity as a computer programmer, *i.e.,* that he was performing his job at a level which satisfied his superiors; (3) that despite his qualifications, he was discharged; and (4) that he was replaced by a nonminority worker, or if he was not replaced, that nonminority workers with comparable work records were retained, while plaintiff was terminated. *See Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Jackson v. University of Pittsburgh,* 826 F.2d at 233; *Lewis v. University of Pittsburgh,* 725 F.2d at 914 n. 4; *Caldwell v. Mobil*

**2.** The methodology of proof in unlawful discrimination cases, as set forth in *McDonnell Douglas Corp. v. Green,* has been adopted by the New Jersey Supreme Court and applied to claims brought under the NJLAD. *See Anderson v. Exxon Co.,* 89 N.J. 483, 492, 446 A.2d 486 (1982); *Goodman v. London Metals Exchange Inc.,* 86 N.J. 19, 31, 429 A.2d 341 (1981). Thus, the legal analysis which follows is applicable to plaintiff's NJLAD claim as well as his Title VII claim.

*Chem. Co.*, 34 Fair Empl.Prac.Cas. (BNA) 1262, 1263 (D.N.J.1985), *aff'd mem.*, 786 F.2d 1145 (3d Cir.1986). If plaintiff is successful in establishing each of the above elements, an inference of unlawful discrimination is raised, because it is presumed that the employer's actions, if not otherwise explained, are the result of impermissible factors. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

■ A review of the record, as well as the submissions of the parties, shows that plaintiff will be unable to present evidence which will create the inference of discrimination necessary to shift the burden to A.T. & T. to rebut the presumption of discrimination by producing evidence that the plaintiff was separated from the company for a legitimate, nondiscriminatory reason. It is abundantly clear that, despite his participation in a training program and on-the-job coaching he received, plaintiff was unable to grasp the concepts necessary to perform the required duties of a computer programmer. Plaintiff testified at his deposition that, as early as November, 1983, he was made aware through oral communications that his superiors believed that he was not performing at the level expected of him. His formal evaluations and appraisals evidence that his assignments were consistently completed late and were often deficient, and his performance was rated, at best, as marginal. Plaintiff continued to perform poorly and showed no signs of improvement, even after he was placed in a special development plan under the guidance of a new supervisor.

In order to create an inference of discrimination, plaintiff must show that he was qualified to be a computer programmer and that he was performing his duties adequately, but that he was discharged in spite of this. The record is replete with evidence that plaintiff's performance was far from adequate; however, plaintiff has not proffered one shred of evidence to rebut this or to raise an issue of fact with regard to this element of his claim. Likewise, plaintiff has not produced any evidence that the nonminority workers in the program were retained despite comparable work records, thus failing to satisfy the fourth element of his *prima facie* case. Instead, he acknowledges his poor performance but attests that it was due to the lack of proper training. Plaintiff attributes his allegedly inadequate training to the racial animus which he charges was directed at him by his two supervisors, Pat Schiros and Bill Wineburgh.

■ Again, plaintiff has not proffered any evidence from which a trier of fact could determine that, in fact, his training differed from the training received by similarly-situated nonminority computer programmers, or, if there was a disparity in training, that it was the result of racial animus. The court notes that direct evidence of racial discrimination is unnecessary; however, some evidence must be proffered from which a jury can infer that the disparate treatment occurred because of illegal discrimination. Plaintiff argues first that he was treated differently, in that he was supervised by several different project leaders, while he observed others training under the continuous guidance of one project leader. Plaintiff ignores the fact that at least one of the changes was made necessary when his first project leader, Nancy Dernier, left A.T. & T. after the Bell System divestiture, and that he later requested a transfer to a different group because of his conflict with Pat Schiros, his original supervisor. Moreover, a mere change in project leaders does not, without more, make out a case for deliberate improper training.

■ Second, plaintiff attests that "he was told" that two of his nonminority co-workers were not required to prepare the more difficult COBOL program which was assigned to him. In this regard, plaintiff's affidavit does not satisfy his burden under Rule 56(e) of the Federal Rules of Civil Procedure and is inadequate to oppose a motion for summary judgment. Pursuant to Rule 56(e), an affidavit must be made "on personal knowledge," must set forth "such facts as would be admissible in evidence," and must "show affirmatively that

the affiant is competent to testify to the matters stated therein." *See Maldonado v. Ramirez,* 757 F.2d 48, 50 (3d Cir.1985). The court cannot rely on an affirmation of fact not within the affiant's personal knowledge, and which would be inadmissible hearsay if presented in this manner at trial. Furthermore, there is nothing before the court which would indicate that the COBOL program was a more difficult program to prepare, other than plaintiff's conclusory statement to that effect. Plaintiff simply has not raised an issue of fact with regard to his asserted claim of disparate and improper training.

As noted earlier, the burden of proof in employment discrimination cases lies always on plaintiff. In the instant case, plaintiff is unable to make a sufficient showing regarding his qualification to perform the duties assigned to him or that his difficulties were the result of racially-motivated improper training. In addition, plaintiff has failed to raise a genuine issue of material fact with regard to another element of his claim—that his nonminority coworkers with comparable work records were retained, while he was dismissed. Thus, plaintiff is unable to establish a *prima facie* case, and no inference of discrimination is raised. A.T. & T. production of evidence showing a legitimate nondiscriminatory basis for plaintiff's termination is thus made superfluous. *See Spangle v. Valley Forge Sewer Auth.,* 839 F.2d at 174.

The court notes that even if plaintiff had been able to prove a *prima facie* case of employment discrimination, A.T. & T. has clearly met its burden of production with regard to articulating a legitimate, nondiscriminatory reason for plaintiff's termination. Plaintiff has the burden of proving, by a preponderance of the evidence, that A.T. & T.'s proffered reason is pretextual or incredible. *See*

*Caldwell v. Mobil Chem. Co.,* 39 Fair Empl.Prac.Cas. (BNA) at 1264. Again, there is no factual support in the record for such a finding;[3] hence, it is clear to the court that plaintiff cannot overcome A.T. & T.'s proof that he was terminated for a legitimate reason.

Accordingly, for the reasons stated above, defendant's motion for summary judgment is granted. No costs.

## ORDER

This matter having been opened to the court on motion of the law firm of Collier, Jacob & Sweet, Cynthia M. Jacob, Esq., appearing, on behalf of defendant, A.T. & T. Communications ("A.T. & T."), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; and the court having considered the papers submitted in support thereof and in opposition thereto and the arguments of counsel; and for good cause shown,

IT IS on this 2nd day of May, 1989,

ORDERED that A.T. & T.'s motion for summary judgment be and is hereby granted.

---

3. Likewise, there is no support in the record for a finding that A.T. & T.'s failure to place plaintiff in another, comparable position was racially motivated. First, plaintiff has not demonstrated that A.T. & T. had any obligation to find another job for him within the company. Second, even if A.T. & T. was committed, through established

policy, to finding him another, comparable position, plaintiff readily concedes that Ms. Davis, the person ultimately responsible for his termination, always treated him fairly and made every effort to find him another job. Such evidence hardly supports a finding of racial discrimination.