287 N.J. Super. 396 (1996)
671 A.2d 176
EDOUARD J. CASSEUS, PLAINTIFF-APPELLANT,
v.
ELIZABETH GENERAL MEDICAL CENTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1995.
Decided February 16, 1996.
*399 Before Judges MICHELS and VILLANUEVA.
Ben J. Zander argued the cause for appellant (Mr. Zander, attorney; Mr. Zander and Jennifer L. DeStefano, on the brief).
Lisa A. Freidenrich argued the cause for respondent (Lindabury, McCormick & Estabrook, attorneys; John H. Schmidt, Jr., and Ms. Freidenrich, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff Edouard J. Casseus appeals from a final judgment of the Law Division entered following a bench trial that dismissed his damage claim based on employment discrimination against defendant Elizabeth General Medical Center. We affirm.
*400 In March 1992, plaintiff filed a charge of discrimination with the New Jersey Division on Civil Rights and the Federal Equal Employment Opportunity Commission (EEOC), claiming that defendant had discriminated against him in violation of Title VII, 42 U.S.C.A. §§ 2000e to e-17. The EEOC determined that "there is no reasonable cause to believe that there has been a violation of the statute(s) under which the charge has been filed."
On June 16, 1993, plaintiff filed a complaint in the Superior Court, Law Division, alleging that he had been subjected to unlawful discrimination in violation of Title VII and the Law Against Discrimination, N.J.S.A. 10:5-1 to -42. Defendant denied any discriminatory conduct. The case was tried before the Judge A. Donald McKenzie, sitting without a jury. The following evidence was presented by the parties.
Plaintiff is a black Haitian male who has lived in the United States for twenty-five years and is now a citizen. He was educated in this country and graduated from Rutgers University in 1979. In 1973, plaintiff began working for defendant's predecessor, Alexian Brothers' Hospital, as a sanitation aide. His duties primarily entailed physical labor, e.g., working in the stockroom and cleaning. Plaintiff held this position until February 1990 at which time defendant took over the hospital.
Defendant's vice-president for human resources, Robert Mazur, testified that, as part of the takeover, defendant had agreed to hire all Alexian Brothers' employees, although he admitted that the employees were required to go through a "cursory" interview process. Mazur interviewed plaintiff and hired him as a dietary aide. Although plaintiff's job title changed, his duties remained more or less the same.
In November 1991, plaintiff was promoted to the newly-created position of "sanitation supervisor."[1] It was explained that he was *401 to be a "working supervisor," which meant that in addition to performing supervisory duties, he would be required to do "handson type work." In plaintiff's view, although his rate of pay increased from $8.59 per hour to $9.20 per hour, he was performing exactly the same job that he had been performing before being promoted because defendant failed to fill plaintiff's vacated dietary aide position. Plaintiff conceded, however, that his new job required him "to observe the sanitation of the various employees in the kitchen" and to discipline kitchen employees when their work resulted in health hazards. Furthermore, according to Mazur's testimony, plaintiff had responsibility to "direct" the people who mopped the floors and cleaned the food preparation areas.
At a January 9, 1992, meeting, defendant's director of food services, Martin Cohen, explained to plaintiff that he was not adequately performing the job of supervisor. At that time Cohen completed an evaluation of plaintiff in which he recommended that plaintiff be returned to his former position. Defendant ultimately decided to demote plaintiff effective February 28, 1992.
On February 17, 1992, after being shown the evaluation of his work performance, plaintiff resigned. Plaintiff was informed at that time that his promotion had been subject to a ninety-day probationary period, and during that ninety-day period it had been determined that he lacked the requisite supervisory skills. Plaintiff disputed that there was a probationary period and claimed that defendant was being "prejudicial" in imposing one upon him. Mazur testified that it was defendant's practice to subject all newly promoted management employees to the ninety-day probation period. He testified further that "[i]t was very clear from the start that [plaintiff's] interpretation, understanding of the job of Sanitation supervisor was distinctly different from the reality of the job as we had ... intended and laid out for him." The position of sanitation supervisor was later filled by a white male.
Although it was defendant's normal practice to terminate an employee who had been promoted to a supervisory position and later proved unsatisfactory in that position, since plaintiff had *402 done a good job in his prior position, defendant assigned plaintiff to his former job of dietary aide, albeit in the West Wing of the hospital instead of the East Wing where plaintiff had been working.
Plaintiff reconsidered his decision to resign, and in a meeting with Cohen stated that he would like to continue working as a dietary aide, but only if he could be transferred back to the East Wing because in the East Wing he would be working hours which would enable him to keep his part-time position at another hospital. Cohen rejected this request on the ground that putting plaintiff in the West Wing would save him the "embarrassment" of being demoted to the ranks of the employees whom he formerly had supervised in the East Wing. Additionally, as Mazur testified, defendant was in the process of moving both patients and employees out of the East Wing in order to accommodate the planned renovation of that building. Plaintiff ultimately resigned.
One month before resigning from his employment with defendant, plaintiff had been offered a position as a full-time supervisor with the ARA Food Services franchise at Beth-Israel Hospital in Passaic where plaintiff had been working part time. Plaintiff testified that he had no choice but to accept the position. Plaintiff's new job paid $11.71 per hour, which is more than he had been making in his job with defendant.
Defendant argues that plaintiff was demoted because he was either unable or unwilling to perform his new job. For example, plaintiff apparently believed that as a supervisor he should not have to perform manual labor, even though it had been explained to him that manual labor was part of a "working supervisor's" job. In support of its theory that plaintiff was unsuited for the position, defendant produced evidence of various incidents that led to plaintiff's demotion.
Shortly after being promoted, for instance, plaintiff asked that he not be required to perform the "stockroom" aspect of his job because of an alleged back problem that would prevent him from lifting anything heavier than twenty pounds. Mazur believed that *403 plaintiff's claim was a ploy to get out of the "working" portion of his "working supervisor" position. Another time, plaintiff was seen wearing a jacket and tie, interviewing replacements for what he perceived as his former job, an act that was "well beyond the purview of his job." This incident appears to support defendant's belief that plaintiff felt he should not be required to perform two "jobs for the wage of one."
Plaintiff frequently complained to his superiors that he was having difficulty getting the other employees to listen to him and to respect him as a supervisor. Cohen testified that there was a "definite communication gap" between plaintiff and those persons whom he supervised. Plaintiff himself complained that some employees would take directions from the other supervisors but not from him. In addition, plaintiff frequently circumvented the "chain of command" by taking his complaints to others rather than to his immediate supervisor.
After all of the proofs were presented, the trial court found that plaintiff had failed to prove his claim of discrimination. The trial court found that defendant's failure to hire another worker to fill plaintiff's original job as dietary aide was not a pretext for discrimination. Plaintiff's demotion was justified by his inability to perform the supervisory aspects of his job and his failure to understand the nature of the job. Defendant assigned plaintiff to the West Wing after his demotion not to encourage him to resign but because management made a legitimate decision that it would be inappropriate for a demoted employee to work among those whom he had once supervised.
Under federal law ("Title VII"), it is unlawful for an employer
to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin.
[42 U.S.C.A. § 2000e-2(a)(1).]
*404 For the purpose of this statute, an "employer" is an entity "engaged in an industry affecting commerce [which] has fifteen or more employees." 42 U.S.C.A. § 2000e(b).
There is some question as to whether defendant is an employer for the purpose of this statute. Although it appears that defendant has fifteen or more employees, it is not clear whether a hospital is "engaged in an industry affecting commerce." The term "industry affecting commerce" is defined to mean "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry `affecting commerce' within the meaning of the Labor-Management Reporting and Disclosure Act of 1959." 42 U.S.C.A. § 2000e(h). At least one court has held that a hospital is such an industry. United States v. Medical Soc'y, 298 F. Supp. 145, 152 (D.S.C. 1969); see also Scharon v. St. Luke's Episcopal Presbyterian Hosps., 929 F.2d 360, 361 & n. 2 (8th Cir.1991) (apparently assuming that a hospital is an employer for the purpose of Title VII); accord Zaklama v. Mt. Sinai Medical Ctr., 842 F.2d 291, 294-95 (11th Cir.1988); Mousavi v. Beebe Hosp. of Sussex County, Inc., 674 F. Supp. 145, 148 (D.Del. 1987), aff'd o.b., 853 F.2d 919 (3d Cir.1988). It appears from these cases that the prevailing view is that a hospital is an employer for the purpose of Title VII, and, we, therefore, assume so as well.
The basic structure of a Title VII case is stated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In that case the Court held that the plaintiff must carry the initial burden of proof to establish a prima facie case of racial discrimination. Id., 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. This may be done by showing:
(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications he was rejected; and (iv) that, after his rejection the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications.
[Ibid.]
*405 The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Ibid. Finally, after the employer has articulated such a reason, the plaintiff must be given an opportunity to show that the proffered reason is a mere pretext. 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.
It has been held that an employer's policy with respect to promotions is an appropriate subject matter under Title VII, and that the McDonnell Douglas analysis applies to such claims. Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472-73 (7th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). It is also true that demotions are cognizable under Title VII. See e.g., Sennello v. Reserve Life Ins. Co., 667 F. Supp. 1498, 1507-10 (S.D.Fla. 1987), aff'd, 872 F.2d 393 (11th Cir.1989).
Obviously, "black Haitians" form a protected class under Title VII. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278-79, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493, 500 (1976) (protection of Title VII is "not limited to discrimination against members of any particular race"). Furthermore, it should require no citation to state that an employee's poor performance in discharging his duties is a legitimate nondiscriminatory reason to fire or demote the employee. See Turner v. Crowley's Ridge Dev. Council, 919 F.2d 79, 80 (8th Cir.1990) (employee's inadequate performance of her managerial duties was a legitimate nondiscriminatory reason for discharge); Jamerson v. Board of Trustees of University of Alabama, 662 F.2d 320, 324 (5th Cir.1981) (employee whose fellow employees found him to be "extremely difficult to work with" was legitimately discharged).
The Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, makes it unlawful
[f]or an employer, because of the race, ... color, [or] national origin ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.
[N.J.S.A. 10:5-12a.]
*406 Defendant is an "employer" for the purpose of this statute. N.J.S.A. 10:5-5a, -5e.
In order to determine whether there is discrimination under LAD, the New Jersey Supreme Court has adopted the McDonnell Douglas three-step test that applies to Title VII claims:
(1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate nondiscriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.
[Dixon v. Rutgers, 110 N.J. 432, 442, 541 A.2d 1046 (1988).]
The Court also held that the plaintiff's prima facie case is the same as in a Title VII case. To make out a prima facie case of discrimination under LAD, the plaintiff must show:
(1) that she is a member of a class protected by the anti-discrimination law; (2) that she was qualified for the position or rank sought; (3) that she was denied promotion, reappointment, or tenure; and (4) that others ... with similar or lesser qualifications achieved the rank or position.
[Id. at 443, 541 A.2d 1046.]
Promotions have been recognized as an appropriate subject matter under LAD. See Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 84, 389 A.2d 465 (1978). Presumably, demotions are also recognized as an appropriate subject matter. Clearly, an inability to perform the job is a legitimate reason under LAD to discharge (or to fail to promote, or to demote) an employee. See Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir.1989) (lack of leadership or management skills is a valid reason not to promote an employee to a position of leadership or management); Baxter v. AT & T Communications, 712 F. Supp. 1166, 1174 (D.N.J. 1989) (inability to understand how to write computer programs was a legitimate reason to discharge employee from his job as a computer programmer).
Plaintiff's main argument apparently is that defendant's claim that he unsatisfactorily performed his job was a mere pretext for his demotion. The record, however, is barren of any *407 evidence of racial hostility toward plaintiff, beyond whatever inference is to be drawn from the coincidence that plaintiff was black and was demoted. Once the employer has presented a legitimate reason for a demotion, as defendant did herein, the law requires that plaintiff come forth with more than mere inferences. Plaintiff has failed to controvert the substantial evidence that he was unqualified for the position of sanitation supervisor.
The trial court's conclusion that plaintiff was terminated because his job performance was unsatisfactory is supported by the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). The trial judge never stated that plaintiff proved a prima facie case of discrimination. It does not matter, however, whether he did. Even assuming that plaintiff proved his prima facie case, the trial judge was satisfied that defendant had demoted plaintiff for a legitimate reason  his inability to perform his job. Thus, the trial court properly dismissed his claim at the end of the case.
Affirmed.
NOTES
[1] Plaintiff was the only Haitian supervisor, although three of the other four dietary supervisors in the East Building where plaintiff worked were from ethnically diverse backgrounds.